IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SIGNATURE FLIGHT SUPPORT, LLC, and PIEDMONT HAWTHORNE AVIATION LLC,   Plaintiffs,  v.  CATHERINE CARROLL,   Defendant. | Civil Action No. 7:20-cv-00739  By: Elizabeth K. Dillon   United States District Judge |

**MEMORANDUM OPINION**

Pending before the court is defendant Catherine Carroll's partial motion to dismiss plaintiffs' verified complaint for failure to state a claim. (Dkt. No. 15.) The matter has been fully briefed, and the court held a hearing on the motion. For the reasons stated below, the court will deny the motion.

I. BACKGROUND

**A. Factual Background**

Plaintiffs Signature Flight Support, LLC and Piedmont Hawthorne Aviation, LLC doing business as Signature Flight Support (collectively, "Signature") is a global provider of Fixed Based Operations ("FBO") services for general aviation. (Compl. 1–3, Dkt. No. 1.) FBO is an aviation service business offered at an airport to non-commercial aircraft that provides services such as aircraft fueling, hangar and office rentals, and maintenance and repair. (*Id.* at 3.) Since 1958, Signature and its predecessor company have provided FBO and other aviation services at the Roanoke Blacksburg Regional Airport (the "Airport"). (*Id.* at 3–4.) Signature also has contracts to provide services to UPS at the Airport. (*Id.* at 4.) Over the years of offering these

1

services, Signature has developed commercially valuable information which it considers to be proprietary. This information includes: "detailed budget figures, actuals, and forecasted financial information; asset registries; customer identification and pricing [information]; customer contact information []; fuel purchase history; staffing details []; and daily fuel inventory checklists." (*Id.* at 4.) Signature protects the secrecy of this information. (*Id.*)

On June 17, 1985, Signature's predecessor company hired defendant Catherine Carroll. (Compl. 4.) On July 27, 2018, Signature promoted Carroll to Station Manager of Signature's FBO at the Airport. (*Id.*) "In connection with her employment, Carroll received copies of and agreed to abide by Signature's Employee Handbook, Proprietary Information Policy, Information Technology Acceptable Use Policy, and Code of Business Ethics." (*Id.* at 5.) Pursuant to these policies, Carroll agreed to protect Signature's proprietary information, including "all non-public information that might be useful to competitors or that could be harmful to [Company] or its customers if disclosed." (*Id.* at 7.) Signature then disclosed confidential information to Carroll. (*Id.* at 8.) On September 11, 2020, Signature terminated Carroll's employment with the company. (*Id.*)

On October 16, 2020, the Roanoke Regional Airport Commission (the "Commission") issued a Request for Proposals for FBO Services at the Airport (the "RFP"). (Compl. at 9.) The RFP explained that Signature was the sole provider of FBO services at the Airport, but its lease agreement with the Commission was set to expire in November 2021. (*Id.*) The RFP also provided tables illustrating the FBO's historical fuel sales and revenue at the Airport. It stated that this financial information was gathered through several sources, including interviews with the previous FBO managers. (*Id.*) The Airport later published "Addendum 2" to the RFP that included electronic files titled "Signature Financial data misc" and "Updated Hangar List 08-

2020." (*Id.* at 10.) Signature claims that these documents contain Signature confidential information. Upon learning of the Airport's possession and publication of this confidential information, Signature asked the Airport to delete the files and the Airport complied. (*Id.* at 11.) However, between the time the Airport published the files on the morning of November 13, 2020, and deleted the files that evening, the files were publicly available. (*Id.*)

Signature observed that some of the documents in Addendum 2 contained handwritten notes by Carroll. (*Id.* at 11.) On November 14, 2020, Signature sent a letter to Carroll advising her that it believed she had misappropriated Signature's confidential information and provided it to the Airport. (*Id.* at 12.) Signature also sent a letter to the Airport about its concerns regarding the release of this misappropriated information. The Airport opened an investigation into the matter, which led the Airport to place Tim Bradshaw, the Airport Executive Director, and Rick Osborne, the Airport Executive Director of Planning and Engineering, on administrative leave. (*Id.* at 13.)

On December 4, 2020, the Airport responded to a Virginia Freedom of Information Act ("FOIA") request and provided Signature with an email exchange between Osborne and Bradshaw. (*Id.* at 13.) The email exchange occurred on the morning of November 15, 2020, and the subject line was "Letter re: Signature's Confidential Information." The email stated, in pertinent part:

> I'm not worried about the letter from signature. I spoke to Sam this morning and he thinks it's just Jim Hopkins [Signature's Senior Vice President] trying to muscle us a bit. . . . We didn't do anything illegal or unethical. Signatures just pissed. Have you spoken to Cathy Carroll? I just want to make sure that she doesn't get a surprise phone call. We're not going to disclose where the information came from. (*Id.* at 14.)

Signature argues that this email exchange confirms that Carroll was the source of the Signature's confidential information that was improperly provided to the Airport. (*Id.* at 15.)

### B. Procedural History

On December 10, 2020, Signature filed suit against Carroll alleging misappropriation of trade secrets in violation of 18 U.S.C. §§ 1836, *et seq.* (Count 1) and the Virginia Uniform Trade Secrets Act, Code § 59.1-336 (Count 2). (*Id.* at 17 –24.) Signature also alleges breach of fiduciary duties (Count 3), conversion (Count 4), unjust enrichment (Count 5), tortious interference with customer relationships (Count 6), and business conspiracy in violation of Virginia Code §§ 18.2-499 and -500 (Count 7). (*Id.* at 24–29.)

On January 14, 2021, Carroll moved to dismiss Counts 4, 5, 6, and 7 for failure to state a claim. (Dkt. No. 15.) Carroll argues that many of plaintiffs' claims are preempted under the Virginia Uniform Trade Secrets Act ("VUTSA"), which "eliminat[es] alternative theories of common law recovery which are premised on the misappropriation of a trade secret." (Def.'s Br. 4, Dkt. No. 16.) Carroll also argues that plaintiffs have failed to plead a claim of tortious interference and business conspiracy. (*Id.* at 6–8.) Signature argues that its claims are not preempted by VUTSA and that it has sufficiently pled all claims. (Pls.'s Response, Dkt. No. 14.) Signature argues, in part, that Counts 4 through 6 are not preempted by VUTSA because the claims are not premised entirely on the misappropriation of Signature trade secrets but, rather, are also based on Carroll's improper use of a company smartphone and other company property. (Pls.'s Br. 7.)

At the hearing on the motion, the court denied the motion as to Counts 4 and 7. (Dkt. No. 23.) The court reasoned that Count 4, the conversion claim, can go forward because even if VUTSA preemption applies to the allegation of misappropriated trade secrets, it does not apply to the improper use of the smartphone or other company property. As to Count 7, the court

4

reasoned that taking the allegations in the complaint as true and noting the email agreement between Bradshaw and Osborne, Signature has sufficiently pled a claim of business conspiracy. The court took the motion to dismiss Counts 5 and 6 under advisement, which the court will now address in this opinion.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 550. A court will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A court need not accept "legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  VUTSA Preemption

VUTSA provides for injunctive relief and damages for the misappropriation of a trade secret. Va. Code §§ 59.1-337 and 338. VUTSA defines a trade secret as:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

5

        2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Va. Code § 59.1-336.

"The determination of whether a trade secret exists is generally a question of fact to be determined 'from the greater weight of the evidence.'" *Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012), *aff'd*, 505 F. App'x 242 (4th Cir. 2013) (quoting *MicroStrategy, Inc. v. Li*, 268 Va. 249, 264 (Va. 2004)).  "The case law is clear that just about anything can constitute a trade secret under the right set of facts." *Id.* (quoting *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004)).  "But to meet the definition, an alleged trade secret must meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy." *Id.* (citing *Decision Insights, Inc. v. Sentia Group, Inc.*, 416 F. App'x 324, 331 (4th Cir. 2011)).  These criteria are "heavily fact-dependent." *Id.*

      The preemption provision of VUTSA "displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret."  Va. Code § 59.1-341.  "The VUTSA preemption provision is 'intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret.'" *Trident Prod. & Servs., LLC*, 859 F. Supp. 2d at 782 (quoting *Smithfield Ham & Products Co., Inc. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995)).  Accordingly, "only those distinct theories of relief that are supported by facts unrelated to the misappropriation of the trade secret may escape preemption under the VUTSA." *Id.*

      "In considering whether [claims] are preempted by [] VUTSA, [courts have noted] that preemption only occurs where the common-law claims 'are premised entirely on a claim for the

misappropriation of a trade secret.'" *Rogers Elec. of Va., Ltd. v. Sims*, 93 Va. Cir. 484 (2015) (citing *Smithfield Ham and Prods, Co.*, 905 F. Supp. at 348). "In other words, the plaintiff must be able to demonstrate 'that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret.'" *Id.* (quoting *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 833 (W.D. Va. 2008)).

"Courts hesitate to assign the label of 'VUTSA trade secret' to proprietary information at the pleadings stage for fear of depriving parties the opportunity to conduct fact-finding on the issue." *Anderson v. Fluor Intercontinental, Inc.*, No. 1:19-CV-0289, 2021 WL 837335, at *17 (E.D. Va. Jan. 4, 2021) (citing *Int'l Paper Co. v. Gillam*, 2003 WL 23573613, at *4 (Roanoke City Cir. Ct. Dec. 23, 2003); *Bonumose Biochem, LLC v. Yi-Heng Zhang*, 2018 WL 10069553, at *18 (W.D. Va. May 21, 2018); *AWP, Inc. v. Commonwealth Excavating, Inc.*, 2013 WL 3830500, at *7 (W.D. Va. July 24, 2013); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F. Supp. 2d 652, 656–59 (2002). However, "[c]ourts in this Circuit have recognized that competitor pricing data . . . constitutes a VUTSA trade secret, even at the pleadings stage." *Id.* (citing *OROS, Inc. v. Dajani*, 2019 WL 2361047, at *3 (E.D. Va. June 4, 2019) (citing *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 426 (E.D.N.C. 2015) (competitor pricing information qualifies as trade secret for purposes of VUTSA on a motion to dismiss)).

In *AWP, Inc. v. Commonwealth Excavating, Inc.*, the court held that the defendant's preemption argument in support of a motion to dismiss was premature. No. 5:13CV031, 2013 WL 3830500, at *7 (W.D. Va. July 24, 2013) (citing *Stone Castle Fin., Inc.*, 191 F. Supp. 2d at 659) (where the Eastern District concluded that "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of

7

relief as preempted by the VUTSA."). The court reasoned that "although AWP ha[d] sufficiently alleged the existence of a trade secret, it ha[d] not yet proven its entitlement to relief under the VUTSA." *Id.*; *see also Bonumose Biochem, LLC*, 2018 WL 10069553, at *15 (W.D. Va. May 21, 2018) (denying a motion to dismiss a civil conspiracy claim "arguably [] premised solely on the misappropriation of confidential, proprietary information" because the determination of whether such information qualified as a trade secret presented a question of fact that the parties disputed).

By contrast, in *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, the court granted a motion to dismiss conversion and unjust enrichment claims based on VUTSA preemption, despite plaintiff's arguments that the parties disagreed on the status of the information as a trade secret. 306 F. Supp. 3d 845, 856 (E.D. Va. 2018). The court noted, however, that the plaintiff did not offer these claims as alternative theories of relief to the VUTSA claim. *Id.* ("SSL does not offer any alternative theories"); *but see Bonumose Biochem, LLC*, No. 3:17-CV-00033, 2018 WL 10069553, at *15 (quoting *Int'l Paper Co.*, No. CL03-496, 2003 WL 23573613, at *4 (citing *Stone Castle Fin., Inc.*, 191 F. Supp. 2d at 659)) ("explain[ing] that the VUTSA 'does not preempt alternative tort recovery unless it is clear' that the 'information at issue constitutes a trade secret.'").

Here, Carroll argues that the court should dismiss Signature's claims for conversion (Count 4)[1], unjust enrichment (Count 5), and tortious interference (Count 6) because they are preempted under VUTSA. (Def.'s Br. 5.) Signature argues that these claims are not preempted because it is premature to decide this issue before the court determines whether Signature's alleged trade secrets are actually trade secrets under VUTSA. (Pls.'s Br. 8.)

---

[1] While the court stated that it would dismiss Count 4 at the hearing because of alleged property that clearly did not constitute trade secrets, it includes Count 4 as relevant to the trade secret preemption analysis.

8

Competitor pricing data generally qualifies as a trade secret under VUTSA; therefore, Signature has likely alleged the existence of a trade secret with respect to the competitor pricing data contained in the information obtained by the Airport. However, the parties dispute whether the wide variety of other information Signature claims was misappropriated is properly defined as a VUTSA trade secret. As in *AWP, Inc.*, it is unknown whether Signature will be successful on all the elements of its VUTSA claim. Although Signature did not expressly argue conversion, unjust enrichment, and tortious interference as alternative theories of relief in its pleadings, it did so at the hearing. Therefore, dismissal of Counts 4 through 6 based on VUTSA preemption is premature at this stage of the litigation.

## C. Tortious Interference

The elements of tortious interference with contractual relations include: (1) a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112, 120 (1985)). In addition, "Virginia caselaw applying the tort of intentional interference with a business expectancy contain a fifth, unstated element to the prima facie case: a competitive relationship between the party interfered with and the interferor." *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2005) (collecting cases). In the context of claims involving tortious interference with a business expectancy or a contract at-will, "a plaintiff must also demonstrate that the defendant employed 'improper methods.'" *Com. Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 214 (4th Cir. 2001) (citing *Maximus, Inc. v. Lockheed Info. Sys., Inc.*, 254 Va. 408, 493 S.E.2d 375, 378–379 (1997); *Duggin v. Adams*, 234

Va. 221, 360 S.E.2d 832, 836 (1987)). Methods of interference that are considered "improper" include the "misuse of insider or confidential information." *Id.*

Regarding the second and third elements of tortious interference, "[t]he interferer must simply have 'knowledge of the business relationship' and must intend 'to disturb' this relationship; malice is immaterial to the determination of this issue." *Advante Designs, Inc. v. McGinnis*, 61 Va. Cir. 134 (2003) (citing *Chaves*, 230 Va. at 120). Regarding the third and fourth elements, the plaintiff must "plead facts establishing which customer relationships [d]efendants allegedly interfered with or how [d]efendants engaged in intentional misconduct or employed improper methods to interfere with those relationships." *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 735 (E.D. Va. 2012) (citing *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 830 (E.D. Va. 2011) (failed to allege facts demonstrating reasonably certain business opportunities . . . were lost as a result of the defendant's misconduct)).

Here, Signature has sufficiently pled the first two elements of tortious interference. Signature has a contractual relationship with the Airport and a business expectancy in the FBO contract. Carroll was aware of this contractual relationship and FBO contract based on her role as a manager for Signature. However, Signature has failed to plead facts that support the third and fourth elements of tortious interference. Signature has not pled that Carroll's release of Signature's confidential information induced or caused a breach of Signature's contract with the Airport or any other clients, or that the alleged misappropriation caused Signature to lose the FBO contract. Further, it is unclear from the complaint and briefing how Signature's business relationships have been damaged by Carroll's alleged misappropriation of Signature's confidential information. Signature does not claim that any competitor has used the misappropriated information to compete with Signature. Signature's general allegation that

Carroll's actions have damaged its business relationships without any specificity about the nature of such damage cannot survive a motion to dismiss. For this reason, the court will grant Carroll's motion to dismiss as to Count 6.

### III.  CONCLUSION

For the reasons stated above, the court will grant the partial motion to dismiss (Dkt. No. 15) as to Count 6 and deny the motion to dismiss as to Counts 4, 5, and 7. An appropriate order will be entered.

Entered: September 24, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge